**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**DALE A. STEES** **PLAINTIFF**

**v.** **No. 4:11–CV–00785–BD**

**MICHAEL J. ASTRUE, Commissioner,**
**Social Security Administration** **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Dale A. Stees sought judicial review of the denial of his applications for disability insurance benefits and supplemental security income.[1] Mr. Stees last worked as a cashier at a gas station convenience store.[2] He lost the job when he was arrested for a probation violation and sent to jail for 40 days.[3] Mr. Stees maintains he was terminated because he had a seizure on the job two months before the arrest.[4]

Shortly after losing his job, Mr. Stees applied for disability benefits based on epileptic seizures and vascular disease.[5] He reported that he stopped working because

---

[1]*See* docket entry # 2 (complaint).

[2]SSA record at pp. 178 & 199.

[3]*Id*. at p. 399.

[4]*Id*. at p. 399. *See also id*. at p. 42.

[5]*Id*. at p. 176.

of those conditions.[6] He maintained that no company would hire him because of his epilepsy.[7] He also reported that he was unable to walk more than one or two blocks due to vascular disease.[8] Mr. Stees's medical records do not document a diagnosis of either epilepsy or vascular disease. The record established diagnoses for seizure disorder, mood disorder, and substance abuse.

After considering Mr. Stees's applications, the Commissioner's ALJ determined that although Mr. Stees had severe impairments—a seizure disorder and mood disorder[9]—he had the residual functional capacity (RFC) to do light work, with specified nonexertional limitations.[10] The ALJ consulted a vocational expert about available jobs for that RFC. Because the vocational expert identified available jobs, the ALJ concluded that Mr. Stees was not disabled under the Social Security Act.[11] After the

---

[6] *Id*.

[7] *Id*. at p. 190.

[8] *Id*. at pp. 37 & 231.

[9] *Id*. at p. 10.

[10] *Id*. at p. 12. The ALJ identified the following nonexertional limitations: Mr. Stees must avoid hazards such as unprotected heights and moving machinery; he could not climb ropes, ladders or scaffolds; and he must perform work where interpersonal contact is incidental to work performed, complexity of tasks was learned and performed by rote with few variables and required little judgment, and supervision is simple, direct and concrete.

[11] *Id*.

Commissioner's Appeals Council denied Mr. Stees's request for review, the ALJ's decision became a final decision for judicial review.

Mr. Stees raises a multifarious issue challenging the ALJ's conclusion. He maintains that the conclusion is not supported by substantial evidence by focusing on the assessment of his credibility and the development of the record.

**Credibility**. The ALJ questioned Mr. Stees's credibility and Mr. Stees understandably takes particular offense to the ALJ's reference to "his apparent effort to generate evidence for his application and appeal."[12] An ALJ has a statutory duty "to assess the credibility of the claimant."[13] Here, in evaluating Mr. Stees's credibility, the ALJ followed the required two-step process[14] and considered the required factors.[15]

---

[12] Docket entry # 13, pp. 2-3. *See* SSA record at 16 (explaining why the ALJ afforded some, but not substantial weight to opinion evidence).

[13] *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992).

[14] *See Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7p (July 2, 1996).

[15] In considering the credibility a claimant's subjective complaints, an ALJ must consider: (1) the claimant's prior work record; (2) observations by third parties and treating and examining physicians relating to such matters as: (a) the claimant's daily activities; (b) the duration, frequency and intensity of the pain; (c) precipitating and aggravating factors; (d) dosage, effectiveness and side effects of medication; and (e) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

Thus, the question before the court is whether substantial evidence supports the ALJ's credibility evaluation.

The medical evidence contained numerous indications that Mr. Stees sought to generate medical evidence to support his applications. For example, Mr. Stees reported having seizures for 20 years, but did not apply for disability benefits until he lost his job. At that time, Mr. Stees lived in Illinois. A seizure that occurred two months before the job lost—on January 14, 2012—appears to underlie the allegation of disability due to epilepsy.[16] Three months earlier, Mr. Stees had presented to a hospital emergency room, reported that he "might" have had a seizure, but refused treatment, and left.[17] During the visit, he stated that he had not had a seizure for 10 years.[18]

Three months later, Mr. Stees was discovered unresponsive at his job.[19] EMS took him to a hospital emergency room, where he reported a history of seizures and explained that he had not been taking anti-convulsant medication "recently."[20] The

[16] SSA record at p. 290.

[17] *Id*. at p. 286 (Oct. 3, 2009).

[18] *Id*.

[19] *Id*. at p. 291 (Jan. 14, 2010).

[20] *Id*. at p. 305.

treating physician diagnosed seizure disorder, prescribed an anti-convulsant medication, and discharged Mr. Stees.[21]

In a followup visit, the treating physician referred Mr. Stees to a non-profit community health center for indigent patients.[22] Two weeks later, Mr. Stees had not gone to the clinic and complained to the same physician that he could not afford his anticonvulsant medication.[23] Two months later, he applied for disability benefits, without establishing care at the non-profit clinic. The failure to seek treatment for his seizure disorder, despite available indigent care, weighs heavily against Mr. Stees's credibility because such inaction is inconsistent with an allegation of a disabling condition.[24]

Mr. Stees's next effort was to establish care at an Illinois Veterans Administration (VA) clinic.[25] (Mr. Stees's eligibility flowed from six months of post-Vietnam service at age 19.[26]) At the time, Mr. Stees was 49 and living at a rescue mission. He reported to a

---

[21] *Id*. at p. 306.

[22] *Id*. at p. 318 (Jan. 28, 2010).

[23] *Id*. at p. 317 (on Feb. 18, 2010).

[24] *Accord Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988) ("A failure to seek aggressive treatment is not suggestive of disabling back pain.").

[25] SSA record at p. 399 (June 3, 2010).

[26] *Id*. at p. 124.

VA health care provider that he was filing for social security disability.[27] The VA provided him with the previously prescribed anticonvulsant medication.[28] Filing for social security disability benefits without seeking indigent care beforehand suggests that he sought care at the VA to further his applications.

Two weeks later, Mr. Stees met with a mental health worker. He stated that he was depressed and had once been hospitalized at a state mental hospital for suicidal ideation while intoxicated.[29] But Mr. Stees sought assistance with housing, not for mental health treatment.

A few weeks later, Mr. Stees was ejected from the rescue mission for threatening African-American employees and taking an unknown quantity of Tylenol in a stated suicide attempt.[30] EMS took Mr. Stees to a local hospital where he was monitored. After he was stabilized, he was transferred[31] to the state mental hospital where he refused treatment, stating that he wanted to return to the VA clinic.[32] The psychiatrist who attempted to examine Mr. Stees opined that Mr. Stees had a mood disorder, with

---

[27] *Id*. at p. 401 (June 3, 2010).

[28] *Id*. at p. 402 (June 3, 2010).

[29] *Id*. at p. 389 (June 17, 10).

[30] *Id*. at p. 457 (July 5, 2010).

[31] *Id*. at p. 457-59 (July 5, 2010).

[32] *Id*. at p. 441 (July 7, 2010).

narcissistic and antisocial traits.[33] After Mr. Stees calmed down, the state mental hospital discharged him.[34] Refusing treatment, while professing to be suicidal, suggests Mr. Stees sought to further his applications.

The week after his discharge from the state mental hospital, Mr. Stees returned to the VA clinic.[35] There, he was prescribed an anti-depressant. Mr. Stees reported significant benefit from the anti-depressant.[36] He met with VA mental health providers a couple of more times[37] before being taken to a local emergency room.[38] Mr. Stees could not explain how he got there and stated that he must have had a seizure.[39] Medical staff cleaned his nostrils and discharged him.[40]

---

[33] *Id*.

[34] *Id*. (discharged on July 8, 2010)

[35] *Id*. at p. 370 (July 16, 2010).

[36] *Id*. at p. 365 (July 21, 10).

[37] *Id*. at p. 356 (Aug. 5, 2010), p. 350 (Aug. 10, 2010) & p. 472 (Aug. 18, 2010). During the Aug. 10, 2010 visit, Mr. Stees reported that he had contacted an attorney to file for disability benefits for "medical" reasons." *Id*. at p. 351.

[38] *Id*. at p. 454 (Aug. 24, 2010).

[39] *Id*. at p. 454.

[40] *Id*. at p. 455.

After the emergency room visit, Mr. Stees returned to the VA clinic a couple of more times,[41] drifted for a few months,[42] and then called his sister for assistance.[43] His sister paid for a bus ticket so he could travel to Arkansas. He moved in with his sister and her family.

After a few months in Arkansas, he contacted a VA clinic in Fayetteville, Arkansas.[44] He reported that he was trying to get social security disability benefits and that his lawyer told him the clinic was the place to go.[45] The clinic provided him with his anticonvulsant.[46] The delay in contacting the Arkansas VA clinic, and the announcement about social security benefits, weigh against Mr. Stees's credibility because it suggests that Mr. Stees sought to further his applications, not obtain treatment.

---

[41] *Id*. at pp. 347 (Aug. 18, 2010) & 415 (Oct. 18, 2010).

[42] *Id*. at p. 527 (explaining how he got to Arkansas). An Arkansas VA treatment note indicates Mr. Stees was in Madison, Wisconsin, during the drifting time period. *See id*. at p. 524.

[43] *Id*. at p. 600 (sister explaining that in Feb. 2011, Mr. Stees called from Illinois, stated he was suicidal, and asked to move in with her).

[44] *Id*. at p. 502 (June 2, 2011).

[45] *Id*. at p. 499.

[46] *Id*. at p. 501.

Five weeks later, Mr. Stees got into a fight with his sister and was asked to leave. He left the home, sat on the edge of the street, and started taking his depression medication in a stated suicide attempt.[47] EMS took Mr. Stees to a hospital emergency room.

Upon arrival, Mr. Stees was combative. He reported "he had nothing to live for."[48] The emergency room physician reported that a CT of Mr. Stees's head was normal, and lab results were normal, except that Mr. Stees was positive for marijuana use.[49] After calming down, Mr. Stees wanted to leave and go to the drop-in shelter.[50] Instead, he was transferred to a VA hospital in Little Rock.

During the resultant hospitalization, Mr. Stees told multiple health care providers he was there for disability benefits.[51] Despite Mr. Stees's alleged difficulty with walking, hospital staff observed Mr. Stees "frequently up ambulating in hallways with steady gait and without diff[iculty]."[52] Rather than exhibiting depression, staff

---

[47] *Id*. at p. 526 (July 14, 2011).

[48] *Id*. at p. 524.

[49] *Id*. at p. 527. *See also* p. 532 (telling admitting physician that he had a court hearing later in the month and that he wanted to go to the drop-in shelter).

[50] *Id*. at p. 532.

[51] *Id*. at p. 550 & 557.

[52] *Id*. at p. 555 (July 19, 2011).

members described Mr. Stees as "demonstrat[ing] a bright affect evidenced by him smiling, laughing and joking appropriately."[53] Mr. Stees appeared in good spirits, and interacted and joked appropriately with staff and peers.[54] His only apparent concern was his social security hearing scheduled for the following week.[55] The temporal proximity between the stated suicide attempt and the scheduled hearing suggests Mr. Stees sought to further his applications.

The medical records also evidenced a temporal proximity between efforts toward treatment and the administrative proceedings in this case. For example, Mr. Stees established care at the VA after he applied for benefits.[56] He sought no mental health treatment until his applications were denied.[57] He received no treatment for depression for months, but contacted a VA clinic for mental health treatment after his applications were denied on reconsideration.[58] He reported a suicide attempt two weeks before his

---

[53] *Id*. at p. 549 (July 19, 2011).

[54] *Id*. at p. 555.

[55] *Id*. (expressing concern on July 19, 2010 about his hearing scheduled for July 28, 2011).

[56] *Compare id*. at pp. 124 & 131 (applying for disability benefits on Apr. 12, 2010), *with id*. at p. 399 (seeking VA assistance on June 3, 2010).

[57] *Compare id*. at pp. 54-55 (denying applications initially on July 8, 2010), *with id*. at p. 370 (participating in psychiatric intake at VA on July 16, 2010).

[58] *Compare id*. at pp. 56-57 (denying applications on reconsideration on Oct. 10, 2010), *with id*. at p. 501 (obtaining anti-depressant prescription at VA on June 2, 2011).

scheduled hearing. While the evidence is not conclusive, a reasonable mind would accept the evidence as adequate to indicate that Mr. Stees sought to generate evidence for his applications and an appeal.[59] As such, the evidence constitutes substantial evidence supporting the ALJ's credibility assessment.

A reviewing court "will defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so."[60] The ALJ in this case explicitly discredited Mr. Stees's statements and provided good reasons for doing so.[61] The ALJ did not err.

**Development of the record**. In complaining about the development of the record, Mr. Stees asserts that the ALJ should have sought an opinion from a treating psychiatrist or ordered a consultative mental exam. Mr. Stees complains that the ALJ gave little weight to a note written on a prescription slip by a treating VA psychiatrist. The note read as follows: "The veteran is unable to work due to both PTSD, depression, pain related problems. He is to be left alone with reference to work until stable. He will

---

[59] *See Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) ("Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (internal citation omitted) .

[60] *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010) (citation omitted).

[61] As other reasons, the ALJ cited the failure to pursue recommended medical treatment, the role substance abuse may have played in his alleged psychiatric issues, and his willingness to engage in illegal acts. SSA record at pp. 15-16.

be seen again on the 30th."[62] This note is conclusory because it suggests that Mr. Stees was unable to work but provides no diagnostic evidence of the nature or severity of Mr. Stees's mental health. "A conclusory letter diagnosing a claimant as disabled without supporting evidence does not amount to substantial evidence of disability."[63]

Moreover, the psychiatrist's treatment notes do not support the content of the note. Although the record contained no treatment note for the day the note was written, a treatment note written three weeks earlier diagnosed depression, but not PTSD.[64] The psychiatrist reported that Mr. Stees had relapsed in drinking and had sought "any help that he can get."[65] Notably, Mr. Stees stated during the visit that he was willing to work if he could find a job that he could do.[66]

In contrast to the prescription-slip note, the psychiatrist who attempted to treat Mr. Stees at the state mental hospital opined that Mr. Stees had employable skills.[67]

---

[62] SSA record at p. 471.

[63] *Metz v. Shalala*, 49 F.3d 374, 377 (8th Cir. 1995). *See House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007) ("A treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination.").

[64] SSA record at p. 472.

[65] *Id*. at p. 473.

[66] *Id*. at p. 473.

[67] *Id*. at p. 447.

There was no need to ask the VA treating psychiatrist for an opinion because he had provided an opinion—the prescription-slip note.

Likewise, there was no reason to order a mental evaluation because the record provided sufficient medical evidence to determine whether Mr. Stees was disabled due to mental impairment.[68] The record included treatment records from emergency room staffs, the state mental hospital, and various VA clinics. Those records provided sufficient evidence to determine whether Mr. Stees was disabled.[69] The ALJ did not err.

**Conclusion**. The ALJ provided a thorough explanation about why the medical evidence supported the RFC determination. The discussion included an explanation about Mr. Stees's exertional limitations and each nonexertional limitation.[70] The ALJ incorporated the limitations into a hypothetical question and consulted a vocational expert. The vocational expert identified available jobs. The result was substantial evidence supporting the ALJ's conclusion.

Because substantial evidence supports the ALJ's decision denying Mr. Stees's applications, and because the ALJ made no legal error, the court DENIES Mr. Stees's request for relief (docket entry # 2) and AFFIRMS the decision denying the applications.

---

[68] *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994).

[69] *Barrett*, 38 F.3d at 1023.

[70] SSA record at pp. 13-17.

DATED this 17th day of October, 2012.

UNITED STATES MAGISTRATE JUDGE